No. 25-1994

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

**VERIZON CONNECT INC.,**
*Appellant*

v.

**OMEGA PATENTS, LLC,**
*Appellee*

**JOHN A. SQUIRES, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,**
*Intervenor*

---

### RESPONSE TO MOTIONS TO DISMISS AND, IN THE ALTERNATIVE, PETITION FOR A WRIT OF MANDAMUS

---

**Appeal from the U.S. Patent and Trademark Office
Patent Trial and Appeal Board in No. IPR2023-01162**

---

### HAYNES AND BOONE, LLP

Angela M. Oliver
888 16th Street NW, Suite 300
Washington, DC 20006
(202) 654-4552

Debra J. McComas
Michael F. Qian
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
(214) 651-5375

**Attorneys for Appellant Verizon Connect Inc.**

# CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 25-1994 |
| **Short Case Caption** | Verizon Connect Inc. v. Omega Patents, LLC |
| **Filing Party/Entity** | Verizon Connect Inc. |

> **Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: <u>October 29, 2025</u>     Signature:  <u>*/s/ Angela M. Oliver*</u>

Name:     <u>Angela M. Oliver</u>

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| __ None/Not Applicable | __ None/Not Applicable | __ None/Not Applicable |
| Verizon Connect Inc. | *See* footnote[1] | Verizon Communications Inc. |

---

[1] Verizon Connect Inc. is the real party-in-interest. In the PTAB proceeding, out of an abundance of caution in light of prior challenges to the named real parties-in-interest in separate and unrelated

| | | |
|---|---|---|
| | | |

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

__ None/Not Applicable               __ Additional pages attached

| Asheesh (Ashe) P. Puri (Nixon Peabody LLP) | Sasha G. Rao (Nixon Peabody LLP) | |
|---|---|---|
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

 X  Yes (file separate notice; see below)  __ No  __ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

---

IPR petitions, Verizon further identified Verizon Communications Inc. and Verizon Corporate Resources Group LLC as real parties-in-interest for the IPR, solely to the extent that Patent Owner contends that these separate legal entities should be named real parties-in-interest, and to avoid the potential expenditure of resources to resolve such a challenge. *See* Petition for *Inter Partes* Review, IPR2023-01162, Paper 2 at 70 (PTAB) (filed June 30, 2023).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

 X  None/Not Applicable         ___ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................ i

TABLE OF CONTENTS ...............................................................iv

TABLE OF AUTHORITIES .........................................................vi

STATEMENT OF RELATED CASES ...............................................1

INTRODUCTION..........................................................................2

ISSUES PRESENTED .....................................................................4

BACKGROUND.............................................................................5

RESPONSE TO MOTIONS TO DISMISS ........................................7

I.      The Final Order is reviewable through a direct appeal. ................7

II.     Section 314(d) does not bar review............................................ 11

RELIEF SOUGHT IN PETITION FOR WRIT OF MANDAMUS................... 17

STANDARD OF REVIEW ............................................................. 17

REASONS WHY THE WRIT SHOULD ISSUE ...............................18

I.      Verizon has a clear and indisputable right under 35 U.S.C. §318(a)
        to a final written decision addressing patentability of the
        challenged claims. ....................................................................18

        A.      The USPTO lacks statutory authority to terminate an
                instituted IPR, absent limited circumstances not
                applicable here. ..............................................................18

                1.      Section 318(a) requires the Board to issue a final
                        written decision once an IPR is instituted, absent
                        limited circumstances. .........................................18

                2.      Inherent authority to reconsider decisions cannot
                        override a statutory mandate..................................25

B.    Even if the USPTO has broader authority to terminate an instituted IPR, the Final Order here was arbitrary, capricious, and an abuse of discretion. ...............................27

II.    The remaining mandamus criteria are satisfied. ...........................30

A.    Verizon has no other adequate means of relief. ................................30

B.    Mandamus is appropriate under the circumstances...........................31

CONCLUSION...........................................................................37

CERTIFICATE OF COMPLIANCE ...................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
880 F.3d 1345 (Fed. Cir. 2019) ...................................................................7, 8, 9

*Atlanta Gas Light Co. v. Bennett Regul. Guards, Inc.*,
33 F.4th 1348 (Fed. Cir. 2022) ............................................................22, 25, 35

*In re BigCommerce, Inc.*,
890 F.3d 978 (Fed. Cir. 2018) ................................................................. 18, 32

*BioDelivery Scis. Int'l, Inc. v. Aquestive Therapeutics, Inc.*,
898 F.3d 1205 (Fed. Cir. 2018).............................................................. 22, 23, 24

*BioDelivery Scis. Int'l, Inc. v. Aquestive Therapeutics, Inc.*,
935 F.3d 1362 (Fed. Cir. 2019) ............................................................. 22, 23, 24

*City of Chicago v. United States*,
396 U.S. 162 (1969) .............................................................................26

*Click-To-Call Technologies, LP v. Ingenio, Inc.*,
899 F.3d 1321 (Fed. Cir. 2018), *vacated and remanded sub nom.*
*Thryv, Inc. v. Click-To-Call Techs., LP*, 590 U.S. 45 (2020), *and*
*vacated sub nom. Click-To-Call Techs., LP v. Ingenio, Inc.*, 810 F.
App'x 881 (Fed. Cir. 2020)....................................................................22

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017) ................................................................. 32, 33

*Cuozzo Speed Techs., LLC v. Lee*,
579 U.S. 261 (2016) ........................................................................ 9, 10, 35, 36

*Facebook, Inc. v. Windy City Innovations, LLC*,
973 F.3d 1321 (Fed. Cir. 2020) ........................................................12, 13, 14, 37

*FTC v. Dean Foods Co.*,
384 U.S. 597 (1966) .............................................................................32

*Geotab USA, Inc. v. Omega Patents, LLC*,
  IPR2023-00504, Paper 45 (PTAB July 18, 2024) ..............................................29

*Gould v. Control Laser Corp.*,
  866 F.2d 1391 (Fed. Cir. 1989) ........................................................................21

*GTNX, Inc. v. INTTRA, Inc.*,
  789 F.3d 1309 (Fed. Cir. 2015) ..........................................................9, 10, 21, 24

*Hanauer v. Reich*,
  82 F.3d 1304 (4th Cir. 1996)..........................................................................13, 14

*IGT v. Zynga Inc.*,
  144 F.4th 1357 (Fed. Cir. 2025) ........................................................................13

*Interactive Commcn's Int'l, Inc. v. Blackhawk Network Inc.*,
  IPR2024-00465, Paper 39 (Dir. Oct. 1, 2025).........................................2, 33, 34

*Kucana v. Holder*,
  558 U.S. 233 (2010)......................................................................................15, 35

*Leedom v. Kyne*,
  358 U.S. 184 (1958) .........................................................................................14

*Macktal v. Chao*,
  286 F.3d 822 (5th Cir. 2002)......................................................................27, 28

*Maine Community Health Options v. United States*,
  590 U.S. 296 (2020).........................................................................................18

*Martin v. O'Rourke*,
  891 F.3d 1338 (Fed. Cir. 2018) .........................................................................31

*Medtronic, Inc. v. Robert Bosch Healthcare Sys., Inc.*,
  839 F.3d 1382 (Fed. Cir. 2016) ....................................................................21, 25

*Minneapolis Gas Co. v. Fed. Power Comm'n*,
  294 F.2d 212 (D.C. Cir. 1961) ...........................................................................35

*Mylan Laboratories Ltd. v. Janssen Pharmaceutica, N.V.*,
  989 F.3d 1375 (Fed. Cir. 2021) ....................................................................36, 37

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ................................................................. 31

*Omega Patents, LLC v. CalAmp Corp.*,
920 F.3d 1337 (Fed. Cir. 2019) .......................................... 29

*In re Palo Alto Networks, Inc.*,
44 F.4th 1369 (Fed. Cir. 2022) .......................................... 30

*PGS Geophysical AS v. Iancu*,
891 F.3d 1354 (Fed. Cir. 2018) ............................................ 8

*In re Power Integrations, Inc.*,
899 F.3d 1316 (Fed. Cir. 2018) .......................................... 14

*Ruiz Food Prods., Inc. v. MacroPoint, LLC*,
No. 19-2113, ECF No. 33 (Fed. Cir. June 24, 2020) ......................... 21

*SAS Inst., Inc. v. Iancu*,
584 U.S. 357 (2018) ...........................................................*passim*

*Sling TV, L.L.C. v. Realtime Adaptive Streaming LLC*,
840 F. App'x 598 (Fed. Cir. 2021) ...................................... 21

*Sling TV, L.L.C. v. Realtime Adaptive Streaming, LLC*,
IPR2018-01331, Paper No. 39 (PTAB Jan. 17, 2020) ......................... 21

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ................................................. 19, 24

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
749 F.3d 1373 (Fed. Cir. 2014) ................................... 9, 20, 33

*Telecomms. Rsch. & Action Ctr. v. F.C.C.*,
750 F.2d 70 (D.C. Cir. 1984) ...................................... 31, 37

*Thryv, Inc. v. Click-To-Call Techs., LP*,
590 U.S. 45 (2020) ................................................ 12, 14

*Tokyo Kikai Seisakusho, Ltd. v. United States*,
529 F.3d 1352 (Fed. Cir. 2008) ......................... 15, 26, 28, 29

*Unwired Planet, LLC v. Google Inc.*,
   841 F.3d 1376 (Fed. Cir. 2016) ........................................................ 25

**Statutes**

5 U.S.C. §704 ........................................................................................ 7

5 U.S.C. §706 ...................................................................... 13, 14, 31, 36

28 U.S.C. §1295 ............................................................................ *passim*

35 U.S.C. §314 .............................................................................. *passim*

35 U.S.C. §315 .............................................................................. *passim*

35 U.S.C. §317 .................................................................... 19, 21, 27

35 U.S.C. §318 .............................................................................. *passim*

35 U.S.C. §319 .................................................................... 8, 10, 11

**Other Authorities**

37 C.F.R. §42.71 ................................................................................ 28

37 C.F.R. §42.72 ................................................................................ 25

37 C.F.R. §42.75 ................................................................................ 28

Dennis Crouch, *Contradictory Expert Testimony and Director Review*
   (Oct. 2, 2025), https://patentlyo.com/patent/2025/10/
   contradictory-testimony-director.html ............................................. 33

Dennis Crouch, *Have we Reached the Shenanigans Threshold?* (Oct. 8,
   2025), https://patentlyo.com/patent/2025/10/reached-
   shenanigans-threshold.html ............................................................. 16

## STATEMENT OF RELATED CASES

The patent at issue in this *inter partes* review ("IPR"), U.S. Patent No. 8,032,278, is being asserted in the following litigations:

- *Omega Patents, LLC v. Verizon Connect, Inc.*, No. 6:22-cv-02371-WWB-EJK (M.D. Fla.) (filed Dec. 20, 2022);

- *Omega Patents, LLC v. Geotab USA, Inc.*, No. 1:22-cv-01044-CFC (D. Del.) (filed Aug. 9, 2022); and

- *Omega Patents, LLC v. Geotab, Inc.*, 1:23-cv-00382-WCB (D. Del.) (filed Apr. 4, 2023).

An appeal from a separate IPR involving the same patent is currently pending before this Court in *Omega Patents, LLC v. Geotab USA, Inc.*, No. 25-1108 (Fed. Cir.) (appeal from IPR2023-00504). This case has been designated as a companion case to Appeal No. 25-1108. *See* ECF No. 10.

# INTRODUCTION

In this case, the USPTO contrived a novel procedural maneuver that it now contends defeats this Court's jurisdiction. The USPTO had instituted *inter partes* review ("IPR"), held a trial, and issued a final written decision by the Patent Trial and Appeal Board ("PTAB") invalidating all challenged claims. The then-Acting Director disagreed with that decision on the merits—as she was perfectly entitled to do. But rather than proceed to a new final written decision (which undisputedly would have allowed appeal), the then-Acting Director purported to terminate the proceeding and leave nothing for this Court to review. Yet nothing in the statute permitted termination, nor did the then-Acting Director even identify any changed circumstances to justify termination. The USPTO simply wiped away the proceeding by fiat.

With this maneuver, whenever the Director agrees with the patent owner on the merits after an IPR trial, it can shield its analysis from this Court's review by simply terminating the proceedings. That is not hypothetical: the USPTO has already terminated another IPR purely based on agreement with the patent owner on the merits. *Interactive Commcn's Int'l, Inc. v. Blackhawk Network Inc.*, IPR2024-00465, Paper 39 (Dir. Oct. 1, 2025).

That is unlawful. The America Invents Act is clear. Absent narrow statutory exceptions not present here, once the USPTO decides to institute an IPR, it must

issue a final written decision resolving patentability. 35 U.S.C. §318(a). The USPTO violated that requirement here.

And notwithstanding the USPTO's attempt to elude it, this Court has jurisdiction to review the USPTO's order, which is a "decision" "with respect to" an "inter partes review." 28 U.S.C. §1295(a)(4)(A). The judicial-review bar for *institution* decisions is inapplicable because this appeal does not challenge institution—and this type of agency action exceeding statutory authority is a prototypical agency shenanigan reviewable on appeal. *See SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 371 (2018). The Court should, therefore, deny the pending motions to dismiss and proceed to full briefing on the merits.

If this Court were to conclude, however, that direct appeal is unavailable, then at a minimum, mandamus would be appropriate to order the agency to proceed to a final written decision as §318(a) requires.

## ISSUES PRESENTED

1.  Is the then-Acting Director's decision reviewable on direct appeal under 28 U.S.C. §1295(a)(4)(A), which permits an appeal from "a decision" "with respect to" an "inter partes review"?

2.  Can the USPTO insulate its analysis of the patent merits from appellate review by terminating the proceedings post-final written decision without statutory authority?

3.  Did the USPTO violate 35 U.S.C. §318(a) by instituting an IPR yet failing to issue a final written decision addressing patentability of the challenged claims?

4.  Was the then-Acting Director's decision—terminating IPR based on years-old circumstances *after* the Board invalidated all challenged claims in a final written decision—arbitrary, capricious, or an abuse of discretion?

## BACKGROUND

In June 2023, Verizon Connect Inc. ("Verizon") petitioned for IPR of all claims of U.S. Patent No. 8,032,278 ("the '278 patent"). Appx85-167. By that time, others had challenged the same patent in other proceedings, but Verizon asserted combinations of prior art they did not raise. Appx208-216/Add12-20 (Institution Decision).

The USPTO instituted IPR. Appx197-249/Add1-53.[2] After a trial, a three-judge PTAB panel issued its final written decision, holding Verizon had established that all claims would have been obvious. Appx9-75/Add54-120.

Omega Patents filed a Request for Director Review of that decision on February 26, 2025. Appx250-268. Omega contended that the Board erred on the merits, and that the director should reverse the final written decision and uphold the claims. *See, e.g.*, Appx253, Appx266. Omega did *not* seek dismissal or termination of the IPR. *See* Appx250-268.

After Verizon filed a response addressing Omega's arguments, the then-Acting Director issued an Order to Show Cause addressing the merits of the panel's analysis, stating that "the Board failed to explain adequately its decision to deny

---

[2] Where applicable, Verizon provides parallel citations to Verizon's Appendix and the USPTO's Addendum.

Patent Owner a presumption of nexus" and that "the Board did not sufficiently address Patent Owner's evidence of licensing." Appx5-6/Add122-123. The then-Acting Director recognized that "[o]rdinarily, the proceeding would be remanded to the Board to reconsider nexus and the evidence of secondary considerations." Appx6/Add123. But instead of following the regular procedure, the then-Acting Director *sua sponte* proposed to "terminat[e] the proceeding." Appx7/Add124. The only reason she gave was that there had been "seven prior challenges to the claims"—the same seven that already existed when Verizon petitioned for IPR and the USPTO granted institution. Appx6-7/Add123-124. The order directed briefing on termination. Appx7/Add124.

After briefing, the then-Acting Director disposed of the case "as set forth in the [Show Cause] Order." Appx2/Add127; *see generally* Appx1-3/Add126-128 ("Final Order"). She "granted" Director Review and "vacated" the Board's final written decision, and, "in light of the numerous prior challenges," ordered that "the Petition is dismissed" and "the proceeding is terminated." Appx2/Add127. The Decision did not expressly vacate the Board's earlier institution decisions. Appx2/Add127.

Verizon timely appealed on August 5, 2025. *See* Dkt. No. 1. Omega and the USPTO (as intervenor) both moved to dismiss the appeal. *See* ECF No. 12 ("Omega's Motion"); ECF No. 23 ("USPTO's Motion").

## RESPONSE TO MOTIONS TO DISMISS

This Court has jurisdiction to review the USPTO's decision here—whether through a direct appeal or via mandamus. A direct appeal is proper under 28 U.S.C. §1295(a)(4)(A) because the Final Order is the final decision of the USPTO terminating this IPR. In the alternative, mandamus review is available and appropriate as described below. *See infra* pp. 17-38. And in either context, Section 314(d) does not bar review.

## I.     The Final Order is reviewable through a direct appeal.

The Final Order is reviewable on direct appeal. Under 28 U.S.C. §1295(a)(4)(A), "appeal" is available to this Court "from a decision" of the USPTO "with respect to" an "inter partes review under title 35." *See Arthrex, Inc. v. Smith & Nephew, Inc.*, 880 F.3d 1345, 1348-49 & n.1 (Fed. Cir. 2019) ("*Arthrex I*") (explaining §1295(a)(4)(A) "provides a right to appeal" final IPR decisions, either "directly from §1295 or in conjunction with §704 of the APA"); 5 U.S.C. §704 (providing that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review").

That jurisdictional grant encompasses the Final Order here. The Final Order is a "decision" by the USPTO "with respect to" an IPR. §1295(a)(4)(A). The Final Order "is also final, as the judgment terminated the IPR proceeding." *Arthrex I*, 880 F.3d at 1348. It was the culmination of the USPTO's decision-making process, and it eliminates Verizon's ability to pursue an IPR to reach a final written decision (because any new IPR filed by Verizon on this patent would be time-barred). *See PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1361 (Fed. Cir. 2018). Review is available consistent with the "general rule" that "judicial review is presumed to be available with respect to final agency action." *Arthrex I*, 880 F.3d at 1348.

The USPTO (at 14-15) contends that 35 U.S.C. §§141(c) and 319 limit IPR appeals *only* to appeals from final written decisions. But this Court rejected that argument in *Arthrex I*, which the USPTO's brief does not address. 880 F.3d at 1348-49.

There, the Court held that a USPTO order entering adverse judgment against a patent owner was appealable under §1295(a)(4)(A), even though that decision was not a "final written decision." *Id.* This Court considered and rejected exactly the argument the USPTO attempts here: that §319 "created the exclusive means of appeal," so appeal is unavailable if "the Board did not issue a 'final written decision.'" *Id.* at 1348. The Court explained that "§319 does not cabin the appeal

8

rights conferred by §1295," nor does it "provide the exclusive means for appeal over IPR decisions not subject to the appeal bar" in §314(d). *Id.*

The USPTO relies on *St. Jude*, *GTNX*, and *Cuozzo*, but those decisions pre-dated *Arthrex I* and focused on lack of reviewability under §314(d)—which, as the USPTO recognizes (at 14), is a "separate[]" issue from whether jurisdiction exists under §1295(a)(4)(A). *See St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1376 (Fed. Cir. 2014); *GTNX, Inc. v. INTTRA, Inc.*, 789 F.3d 1309 (Fed. Cir. 2015); *see also Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 272 (2016).

*Arthrex I* expressly repudiated the USPTO's current reading of *St. Jude*. *St. Jude* denied review of a run-of-the-mill non-institution decision under §314(d). 749 F.3d at 1374. While the opinion suggested that §1295(a)(4)(A) "is most naturally read" to "match[] the appeal right" for final written decisions, *id.* at 1376, *Arthrex I* later rejected that reading, 880 F.3d at 1349. The Court in *Arthrex I* held it was "not bound by the language in *St. Jude*" concerning §1295(a)(4)(A) because *St. Jude* did not "squarely address" that issue. *Id.* Instead, *St. Jude* was focused on §314(d) and "whether the appeal bar foreclosed appellate jurisdiction." *St. Jude* at most governs appeals from "non-institution decisions" (*id.*)—not the unusual vacatur-dismissal-termination order here.

*Cuozzo* did not address the scope of §1295(a)(4)(A) at all. Instead, the USPTO (at 14) merely quotes a brief parenthetical statement that §319 appeals are limited to the final written decision—which says nothing about the scope of review under §1295(a)(4)(A). *Cuozzo*, 579 U.S. at 272.

*GTNX* focused on the bar on review of institution decision in §324(d) (the post-grant review version of the §314(d) review bar in IPRs). *See GTNX*, 789 F.3d at 1312 (noting the Board "expressly stated that it was vacating the earlier decision to institute" and explaining that decision was fairly characterized as "a decision whether to institute proceedings"). So, even in *GTNX*, the analysis regarding the scope of §1295(a)(4)(A) was not necessary to the decision. *See id.* Had *GTNX* resolved the scope of §1295(a)(4)(A) as applied to IPRs in all circumstances, then *Arthrex I* could not have permitted a direct appeal of an IPR decision *other* than a final written decision.

Additionally, the Final Order is reviewable under §319 as a defective final written decision. The decision is defective because §318(a) requires a final written decision to conclusively resolve patent validity, which the Final Order fails to do. But the PTAB issued a §318(a)-compliant final written decision, the then-Acting Director supplanted it with the Final Order, and that makes Verizon "[a] party

dissatisfied with the final written decision of the Patent Trial and Appeal Board" (as modified by the then-Acting Director), meaning Verizon "may appeal." §319.

## II.    Section 314(d) does not bar review.

The USPTO and Omega both contend that §314(d) bars review of the Final Order, but §314(d) does not preclude review of a direct appeal or mandamus for multiple, independent reasons.

*First*, §314(d) does not bar review of the then-Acting Director's vacatur of the Board's final written decision—this Court can review her conclusion that the Board erred in its obviousness analysis. Section 314(d) bars review only of the "determination" "whether to institute." And the then-Acting Director's obviousness decision was *antecedent to and separate from* her termination decision. First she vacated the Board's final written decision (because she found two alleged flaws in the Board's obviousness analysis). Then she dismissed and terminated (because of the prior challenges to the patent). Appx6-7/Add123-124, Appx2/Add127. That first step is disconnected from any institution analysis— indeed, as the then-Acting Director explained, had she not reached institution-related considerations, her decision on obviousness "[o]rdinarily" would have resulted in "remand[]." Appx6/Add123. Section 314(d) does not bar review of that

obviousness decision.[3] *See Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1332 (Fed. Cir. 2020) (holding joinder decision reviewable despite §314(d) where joinder decision is separate from institution decision). And that decision is final and appealable under §1295(a)(4)(A) because the USPTO disposed of the case with no proceedings left before the agency. To be sure, it is unusual for a Director decision vacating the Board's analysis to be ripe for appeal—but this case's unorthodox posture is the result of the USPTO's novel termination maneuver.

**Second**, separate from Verizon's challenge to the obviousness analysis, §314(d) does not bar review of Verizon's additional challenge, under §318(a), to the USPTO's terminating the IPR without issuing a final written decision. *See infra* pp. 18-27 (addressing §318(a) violation). *SAS* "held that § 314(d) did not bar judicial review of § 318(a)'s application" because that concerns "the manner in which the agency's review 'proceeds' once instituted." *Thryv, Inc. v. Click-To-Call Techs., LP*, 590 U.S. 45, 58 (2020); *see SAS*, 584 U.S. at 371. "[W]hether the PTO had exceeded its statutory authority as to the manner in which the already-instituted IPR

---

[3] The panel's final written decision was correct and fully supported by the panel's reasoning. Verizon disagrees with the then-Acting Director's analysis of the final written decision and intends to challenge that reasoning as part of Verizon's direct appeal.

proceeded" is "reviewable." *Facebook*, 973 F.3d at 1332. That describes Verizon's §318(a) challenge.

**Third**, at a minimum, Verizon's challenge to the unlawful termination of IPR here is reviewable because, despite §314(d), "judicial review remains available consistent with the [APA], which directs courts to set aside agency action 'not in accordance with law' or 'in excess of statutory jurisdiction, authority, or limitations.'" *SAS*, 584 U.S. at 371 (2018) (quoting 5 U.S.C. §706(2)(A), (C)). Verizon contends the USPTO terminated the IPR without authority and in violation of the APA (*infra* pp. 18-30); §314(d) does not bar that claim. *See SAS*, 584 U.S. at 371 (§314(d) does not preclude judicial review where "the Patent Office has engaged in 'shenanigans' by exceeding its statutory bounds" (quoting *Cuozzo*, 579 U.S. at 275)); 5 U.S.C. §706(2) (directing courts to set aside agency action "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations'").

Refusing to reach a final written decision where Congress has required the agency to do so is a "blatant violation[] of [a] legal constraint[]" that permits judicial review. *See IGT v. Zynga Inc.*, 144 F.4th 1357, 1367 (Fed. Cir. 2025); *see also Hanauer v. Reich*, 82 F.3d 1304, 1307 (4th Cir. 1996). And *SAS* confirms that "nothing in §314(d) or *Cuozzo* withdraws [a court's] power to ensure that an inter partes review

proceeds in accordance with the law's demands." 584 U.S. at 371; *see also Facebook*, 973 F.3d at 1332 (addressing whether Board "acted outside any statutory limits under §315(c)"); *In re Power Integrations, Inc.*, 899 F.3d 1316, 1321 (Fed. Cir. 2018) (recognizing that "actions by the agency beyond its statutory limits" are "potential candidates for mandamus review" under *Cuozzo*).

In short, this Court retains the ability to answer fundamental questions of statutory interpretation that govern an agency's authority, like the question presented here, as "§314(d) does not 'enable the agency to act outside its statutory limits.'" *SAS*, 584 U.S. at 371 (quoting *Cuozzo*, 579 U.S. at 275); *see* 5 U.S.C. §706(2). Such review reflects the longstanding principle that "an implicit and narrow exception to [a] bar on judicial review exists for claims that the agency exceeded the scope of its delegated authority or violated a clear statutory mandate." *Hanauer*, 82 F.3d at 1307; *see also Leedom v. Kyne*, 358 U.S. 184 (1958). This type of agency-power challenge falls squarely outside §314(d), which merely bars review of "'an ordinary dispute about the application of' an institution-related statute." *Thryv*, 590 U.S. at 54 (quoting *Cuozzo*, 579 U.S. at 271).

**Fourth**, the Final Order here shows "the Patent Office has engaged in in 'shenanigans'" reviewable notwithstanding §314(d). *SAS*, 584 U.S. at 371 (quoting *Cuozzo*, 579 U.S. at 275). The USPTO dictated the outcome of the case with a

14

maneuver that it now seeks to use to shield itself from review by this Court, by replacing a final written decision invalidating the patent claims with a complete termination of the case. *See Kucana v. Holder*, 558 U.S. 233, 237 (2010) ("Separation-of-powers concerns, moreover, caution us against reading legislation, absent clear statement, to place in executive hands authority to remove cases from the Judiciary's domain.").

The Final Order issued *well over a year* into the instituted IPR—and *after* the panel's final written decision invalidated all challenged claims. *Compare* Institution Decision (Feb. 21, 2024) (Appx197/Add1), *with* Final Order (June 3, 2025) (Appx1/Add126); *see also Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1361 (Fed. Cir. 2008) (where an agency intends to reconsider its decision, "such reconsideration must occur within a reasonable time"). There is nothing even remotely efficient about terminating an IPR at that point. Appx7/Add124 (Show Cause Order stating "a remand to the Board may be inefficient"). Particularly so here, where the alleged errors that the then-Acting Director identified in the panel's final written decision could have been swiftly addressed with further explanation. *See* Appx5-7/Add122-124 (stating the Board did not "properly weigh," "explain adequately," "sufficiently articulate," or "sufficiently address" aspects of Omega's secondary considerations evidence).

The reasoning in the Final Order is even more arbitrary, as it suddenly determines that the existence of other prior proceedings addressing this patent warranted termination—even though those same proceedings existed at the time of the initial institution decision (which the then-director elected *not* to review). *See* Appx199/Add3; *infra* pp. 28-30.

The agency's "shenanigans" are particularly apparent here, where the then-Acting Director jumped into the weeds of the Board panel's obviousness analysis, disagreed with aspects of it on the merits, then terminated the entire proceeding without resolving patent validity. This is bizarre. The Director should not be permitted to address the parties' evidence and arguments after a full IPR trial yet avoid further review via procedural machinations. *See* Dennis Crouch, *Have we Reached the Shenanigans Threshold?* (Oct. 8, 2025) (suggesting termination after a final written decision may "finally give[] 'shenanigans' real content").[4] That amounts to an advisory opinion from the Director on the merits of a patentability challenge—an advisory opinion that a patent owner may seek to use against an IPR petitioner in future proceedings.

---

[4]   *Available    at*    https://patentlyo.com/patent/2025/10/reached-shenanigans-threshold.html.

Likewise, the posture here—where there *was* a final written decision that has now been vacated, without a new final written decision being entered—raises serious questions regarding how Omega might seek to apply §315(e) estoppel against Verizon going forward. For instance, Omega might argue in district court that Verizon is estopped from challenging the claims' validity under grounds that could have been raised in Verizon's IPR, simply because there was, at one point in time, a final written decision in the IPR. And while that would be an incorrect reading of §315(e), and one that Verizon would vigorously dispute, that ambiguity underscores the havoc the agency's shenanigans have wrought.

## RELIEF SOUGHT IN PETITION FOR WRIT OF MANDAMUS

If the Court concludes direct appeal is unavailable, Verizon respectfully requests a writ vacating the then-Acting Director's decision that vacated the final written decision and terminated Verizon's IPR. The Court should direct the USPTO to reinstate the IPR proceeding and issue a final written decision resolving patent validity.

## STANDARD OF REVIEW

A party seeking issuance of a writ of mandamus must (1) establish that it has a clear and indisputable right to issuance of the writ; (2) show it does not have any other adequate means to obtain the desired relief; and (3) convince the court that the

writ is appropriate under the circumstances. *In re BigCommerce, Inc.*, 890 F.3d 978, 981 (Fed. Cir. 2018).

### REASONS WHY THE WRIT SHOULD ISSUE

**I.    Verizon has a clear and indisputable right under 35 U.S.C. §318(a) to a final written decision addressing patentability of the challenged claims.**

**A.    The USPTO lacks statutory authority to terminate an instituted IPR, absent limited circumstances not applicable here.**

The USPTO has no authority to take the action it took here—institute an IPR and then, without any statutory basis to dismiss or any changed circumstances, fail to issue a final written decision. The AIA mandates that the Board "shall" issue a final written decision "[i]f an inter partes review is instituted," and no amount of general, inherent authority to reconsider decisions can override that statutory mandate. §318(a).

**1.    Section 318(a) requires the Board to issue a final written decision once an IPR is instituted, absent limited circumstances.**

Section 318(a) requires that, "[i]f an inter partes review is instituted and not dismissed under this chapter, the Patent Trial and Appeal Board ***shall*** issue a final written decision with respect to the patentability of any patent claim challenged." "This directive is both mandatory and comprehensive." *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 362 (2018); *id.* at 366-67 (referring to §318(a) as a "categorical[] command[]"); *see also Maine Community Health Options v. United States*, 590 U.S.

296, 310 (2020) ("shall" "usually connotes a requirement"). It leaves no room for discretion. *SAS Inst.*, 584 U.S. at 362 ("The word 'shall' generally imposes a nondiscretionary duty."); *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) ("[U]se of the word 'shall' 'creates an obligation impervious to judicial discretion.'" (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998))).

The only exception to this mandatory requirement is if an IPR is "dismissed under this chapter." §318(a). The AIA specifies only certain bases for dismissal "under this chapter" (Chapter 31). *E.g.*, §317(a), §§315(a)(1), (b), (d), (e)(1). The director has authority, for instance, to terminate an instituted IPR in light of the parties' settlement. §317(a). The director likewise has authority to terminate an instituted IPR to enforce the AIA's estoppel provision. §315(e)(1) (after receiving a final written decision, an IPR petitioner "may not request *or maintain* a proceeding before the Office with respect to that claim on any ground that the petitioner raised or reasonably could have raised during that inter partes review" (emphasis added)). Similarly, the USPTO may dismiss an instituted IPR to enforce other statutory bars, such as the one-year time bar and the civil-action bar. §315(b) (an IPR "may not be instituted" if a petition is time-barred); §315(a)(1) (an IPR "may not be instituted" if a petitioner first filed a civil action challenging validity). But the AIA does not grant the USPTO roving authority to terminate an instituted IPR at any time, and for just

19

any reason. Instead, once instituted, an IPR must proceed to a final written decision addressing patentability, as §318(a) commands.

The fact that Congress prescribed only narrow bases for post-institution dismissal makes sense given the structure of IPRs. The AIA "establishes a two-step procedure for *inter partes* review: the Director's decision whether to institute a proceeding, followed (if the proceeding is instituted) by the Board's conduct of the proceeding and decision with respect to patentability." *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1375-76 (Fed. Cir. 2014). That first phase concludes when an IPR "is instituted." *See* §318(a). And once the IPR is instituted, the "petition, not the Director's discretion, is supposed to guide the life of the litigation." *Cf. SAS*, 584 U.S. at 366. At that point, §318(a) mandates that the Board "shall" issue a final written decision on patentability, absent "dismiss[al]." Allowing the Director to revisit the institution question and terminate an IPR at any time during the IPR would collapse these distinct phases into one perpetual discussion about institution, contrary to Congress's two-phased design. *See St. Jude*, 749 F.3d at 1375-76; *see also* §314(b) (setting three-month time frame for agency's institution decision).

The AIA's narrow bases for post-institution dismissal align with traditional circumstances for terminating a case. Dismissing an IPR upon realizing that a

statutory bar precludes IPR (e.g., §315(b)) is akin to dismissing a case upon discovering a jurisdictional defect. Terminating an IPR in light of the parties' settlement (§317(a)) mimics dismissing a court proceeding for lack of an ongoing controversy. *See Gould v. Control Laser Corp.*, 866 F.2d 1391, 1392 (Fed. Cir. 1989) ("Settlement moots an action . . . .").

This Court's prior cases that have allowed the USPTO to terminate or de-institute a case followed those traditional patterns. Most involved statutory bars. *See Medtronic, Inc. v. Robert Bosch Healthcare Sys., Inc.*, 839 F.3d 1382, 1383-84 & n.1 (Fed. Cir. 2016) (IPR dismissed after institution where petitioner failed to identify a real party in interest that was time-barred under §315(b)); *GTNX, Inc. v. INTTRA, Inc.*, 789 F.3d 1309, 1310-11 (Fed. Cir. 2015) (covered business method review dismissed a few months after institution based on §325(a)(1) civil-action bar); *Sling TV, L.L.C. v. Realtime Adaptive Streaming LLC*, 840 F. App'x 598, 598-99 (Fed. Cir. 2021) (non-precedential) (§315(b) time bar)[5]; *Ruiz Food Prods., Inc. v. MacroPoint, LLC*, No. 19-2113, ECF No. 33 (Fed. Cir. June 24, 2020) (non-precedential) (§315(a)(1) civil-action bar).

---

[5] *See* Order Granting Patent Owner's Mot. to Terminate, *Sling TV, L.L.C. v. Realtime Adaptive Streaming, LLC*, IPR2018-01331, Paper No. 39 at 4-7 (PTAB Jan. 17, 2020).

The post-institution termination in *Atlanta Gas Light* likewise applied the §315(b) time bar, and additionally addressed an intervening change in law regarding §315(b). *See Atlanta Gas Light Co. v. Bennett Regul. Guards, Inc.*, 33 F.4th 1348, 1350-54 (Fed. Cir. 2022). During the course of that IPR, the USPTO changed its policy regarding §315(b) to mean that a voluntary dismissal of an infringement complaint would *not* restart the §315(b) clock. *See id.* at 1353.[6] Based on that intervening change, the Board vacated the institution decision and terminated the IPR as time-barred.

The only case cited in the Final Order in which this Court allowed a post-institution dismissal *not* involving a statutory bar was *BioDelivery*—which involved an intervening change of law related to institution. *BioDelivery Scis. Int'l, Inc. v. Aquestive Therapeutics, Inc.*, 935 F.3d 1362 (Fed. Cir. 2019) ("*BioDelivery II*"); *see also BioDelivery Scis. Int'l, Inc. v. Aquestive Therapeutics, Inc.*, 898 F.3d 1205 (Fed. Cir. 2018) ("*BioDelivery I*"). *BioDelivery II* was a unique case that arose from the Board's pre-*SAS* practice of partial institutions (i.e., instituting an IPR on only *some* of the claims or grounds presented in a petition). There, the Board instituted IPRs on just one of the two grounds in each petition. The Board upheld the challenged

---

[6] The Office had adopted this Court's view of §315(b) from *Click-To-Call Technologies, LP v. Ingenio, Inc.*, 899 F.3d 1321 (Fed. Cir. 2018), *vacated and remanded sub nom. Thryv, Inc. v. Click-To-Call Techs., LP*, 590 U.S. 45 (2020), *and vacated sub nom. Click-To-Call Techs., LP v. Ingenio, Inc.*, 810 F. App'x 881 (Fed. Cir. 2020).

claims, and the petitioner appealed. During the appeal, however, the Supreme Court decided *SAS Institute, Inc. v. Iancu*, overturning the practice of partial institution. 584 U.S. 357 (2018). Upon the petitioner's request, this Court vacated the final written decisions and remanded for a do-over of the institution decision—"to implement the Court's decision in *SAS*." *See BioDelivery*, 935 F.3d at 1364; *see also BioDelivery I*, 898 F.3d at 1209 (noting the petitioner's request was "for *SAS*-based relief *from the PTAB's institution* of less than all claims" (emphasis added)). On remand, the Board reanalyzed its institution decision in light of the intervening change in law, denied the petitions, and terminated the proceedings. *BioDelivery II*, 935 F.3d at 1364. When the petitioner appealed again, this Court dismissed, reasoning that the Board's reassessment of institution was barred from review under §314(d). *Id.* at 1365-67.

*BioDelivery II* hinged on an intervening change in law that rendered the USPTO's prior institution analysis unlawful. *See SAS*, 584 U.S. at 371. Accordingly, when *BioDelivery II* stated that "there is no requirement that once instituted, IPRs must proceed through final written decisions," the Court was not facing the circumstances here—nor was the Court addressing the mandatory language in §318(a). *Id.* at 1366. The challenge to the USPTO's reassessment of institution in *BioDelivery II* was, instead, akin to a typical "challenge [to] the Board's

determination *not* to institute review." *See id.* And, *BioDelivery II* similarly reflected a common principle applied by courts: that reconsideration of a decision is appropriate where an intervening change in law materially affects that decision. *See BioDelivery I*, 898 F.3d at 1209 (noting "*SAS* represented a significant change in law that occurred during the pendency of BioDelivery's appeals").

Although this Court has not squarely addressed whether the USPTO is required to issue a final written decision absent a statutory basis for dismissal (e.g., statutory bar) or an intervening change in law pertinent to institution (as in *SAS*), the statute dictates the outcome here.[7] §318(a). The word "shall" means "shall." Absent narrow circumstances not present here, the Board must issue a final written decision addressing patentability once an IPR is instituted. *See Spizzirri*, 601 U.S. at 476 ("[U]se of the word 'shall' 'creates an obligation impervious to judicial discretion.'" (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998))).

---

[7] In *GTNX*, for instance, the Court did not address the mandatory "shall" language in §318(a), and the Court noted that "GTNX identifies nothing in the statute or regulations that precludes the Board from reconsidering an initial institution decision." 789 F.3d at 1312. But §318(a) precludes such reconsideration, absent narrow circumstances.

While the Final Order also cited 37 C.F.R. §42.72[8] as a basis for termination (Appx7/Add127), that agency rule cannot override the AIA's requirement in §318(a) that the Board "shall" issue a final written decision. *See Unwired Planet, LLC v. Google Inc.*, 841 F.3d 1376, 1381-82 (Fed. Cir. 2016) ("[T]he PTO's regulatory authority does not permit it to adopt regulations that expand its authority beyond that granted by Congress."). To the extent that rule purports to broadly allow post-institution terminations for any reason, it is contrary to the AIA for all the reasons discussed above.

### 2. Inherent authority to reconsider decisions cannot override a statutory mandate.

While some of this Court's decisions have assumed that the USPTO "retains the inherent authority to reconsider its decisions," *Atlanta Gas Light*, 33 F.4th at 1355 (citing *GTNX*, 789 F.3d at 1313), any such general authority cannot override §318(a)'s requirement that the agency "shall" issue a final written decision. *See also Medtronic*, 839 F.3d at 1386 ("the Board has inherent authority to reconsider its decisions" (citing *GTNX*, 789 F.3d at 1313)).

---

[8] 37 C.F.R. §42.72 provides: "The Board may terminate a trial without rendering a final written decision, where appropriate, including where the trial is consolidated with another proceeding or pursuant to a joint request under 35 U.S.C. 317(a) or 327(a)."

"An agency's inherent authority to reconsider its decisions is not without limitation," and §318(a) expressly limits that authority here. *See Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1361 (Fed. Cir. 2008). Indeed, "[a]n agency cannot, for example, exercise its inherent authority ***in a manner that is contrary to a statute***." *Id.* (emphasis added). Yet that is exactly what the USPTO did here. Section 318(a) requires the agency to issue a final written decision once an IPR is instituted, and whatever general authority the USPTO may have to reconsider its decisions—e.g., reconsidering a decision on a discovery issue—cannot supplant that statutory mandate. *See City of Chicago v. United States*, 396 U.S. 162, 165-66 (1969) (analyzing statute and concluding "when the Commission undertakes to investigate, it is under a statutory mandate" to reach a "report" on the "merits," even where agency's initial decision "[w]hether" to investigate is "within its discretion"). In short, "an agency obviously lacks power to reconsider where a statute forbids the exercise of such power." *See Tokyo*, 529 F.3d at 1361.

Construing the USPTO's inherent authority to reconsider institution in a way that allows the USPTO to "dismiss" an IPR for *any* reason, and at any point during an IPR, would eviscerate §318(a)'s mandatory "shall" language. The exception would swallow the rule. And not only would such a holding disregard "shall," it would also disregard other limiting language in §318(a)—that an IPR may be

"dismissed *under this chapter*." §318(a). Thus, the only proper post-institution dismissals are those tethered to a statutory basis identified in Chapter 31, such as those discussed above: settlement (§317(a)), a statutory bar (e.g., §315(b)), or an intervening change in law pertinent to institution under §314(a) (as in *SAS*). *See supra* pp. 18-27. The Final Order here was not tied to any of these statutory bases for dismissal.

\* \* \*

In sum, Verizon is entitled to a final written decision addressing patentability of the challenged claims on the merits, and the USPTO violated §318(a)'s mandate by refusing to issue a final written decision. Here, there was no settlement, and the then-Acting Director cited no statutory basis for her Final Order other than §314(a) (the general institution provision). *See generally* Appx1-3/Add126-128; *see also* Appx4-8/Add121-125. The agency therefore lacked authority to terminate Verizon's IPR, and the Court should vacate the Final Order and remand with instructions requiring the agency to issue a final written decision addressing the patentability of the challenged claims.

## B. Even if the USPTO has broader authority to terminate an instituted IPR, the Final Order here was arbitrary, capricious, and an abuse of discretion.

Even if the agency has general authority to dismiss an IPR after institution (USPTO's Motion 11-12), that authority "is not unlimited." *See Macktal v. Chao*,

27

286 F.3d 822, 826 (5th Cir. 2002). Indeed, "an agency may not reconsider [its earlier decision] in a manner that would be arbitrary, capricious, or an abuse of discretion." *Tokyo*, 529 F.3d at 1361 (citing 5 U.S.C. §706(2)(A) and *Macktal*, 286 F.3d at 826). The Final Order here violates these principles for multiple reasons.

*First*, the timing of the Final Order was unreasonable. Where an agency intends to reconsider its decision, "such reconsideration must occur within a reasonable time." *Tokyo*, 529 F.3d at 1361; *see also Macktal*, 286 F.3d at 826. Here, the then-Acting Director waited *well over a year*—and until *after* the final written decision had issued invalidating all claims—to issue a show-cause order suggesting she may terminate the IPR. *Compare* Institution Decision (Feb. 21, 2024) (Appx197/Add1), *with* Final Order (June 3, 2025) (Appx1/Add126). There was no reason for such delay, particularly given the short timelines the agency has established for rehearing. *See* 37 C.F.R. §§42.71(d), 42.75(b)-(c). Nor did the then-Acting Director cite any changed circumstances to justify the late-breaking termination. *Cf.* 37 C.F.R. §42.71(d) (requiring rehearing petition to identify matters "the Board misapprehended or overlooked").

*Second*, the Final Order contradicts the agency's earlier institution decision that the then-director elected *not* to review. The Final Order cites "seven prior challenges to the patent claims" (Appx2/Add127), but those proceedings were not

new. All seven of those proceedings existed at the time of the original institution decision. Appx199/Add3.[9] Similarly, Geotab's separate IPR was already pending when the Board instituted Verizon's IPR—and the final written decision in Geotab's IPR had already issued by the time the Board issued the final written decision in Verizon's IPR. *Compare Geotab USA, Inc. v. Omega Patents, LLC*, IPR2023-00504, Paper 45 (PTAB July 18, 2024), *with* Appx9/Add54 (Jan. 28, 2025). Suddenly citing efficiency concerns based on those proceedings, particularly *after* the Board panel had already done the work of finding the claims unpatentable in Verizon's final written decision, is arbitrary, capricious, and an abuse of discretion. *See Tokyo*, 529 F.3d at 1361 (citing 5 U.S.C. §706(2)(A)).

**Third**, the reasoning in the Final Order lacks any rational connection to the result. Nowhere did the then-Acting Director explain why termination of the *entire* IPR that the parties had litigated for *two years* would be reasonable, where the only alleged deficiency in the panel's final written decision was that it purportedly should have provided additional explanation. *See* Appx5-7/Add122-124 (stating Board did not "properly weigh," "explain adequately," "sufficiently articulate," or

---

[9] *See generally Omega Patents, LLC v. CalAmp Corp.*, No. 6:13-cv-01950 (M.D. Fla.) (dismissed June 16, 2022) (case subject of *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337 (Fed. Cir. 2019)); *Ex Parte* Reexamination Serial Nos. 90/013,587; 90/013,851; 90/014,309; 90/014,419; and 90/014,675. Appx199/Add3.

"sufficiently address" aspects of Omega's secondary considerations evidence). The drastic remedy simply does not match the purported concern.

In short, even if the then-Acting Director had authority to terminate the IPR after the panel had invalidated all challenged claims, the decision to do so here cannot pass muster.

## II.    The remaining mandamus criteria are satisfied.

### A.    Verizon has no other adequate means of relief.

As explained above in the section addressing Omega's and the USPTO's Motions to Dismiss, a direct appeal is proper under the circumstances here. *See supra* pp. 7-17. But if the Court holds that review by direct appeal is not available, mandamus is the only remaining mechanism for obtaining Verizon's requested relief (a final written decision on patentability in the already-instituted IPR). *See In re Palo Alto Networks, Inc.*, 44 F.4th 1369, 1374 (Fed. Cir. 2022) (stating mandamus is the proper mechanism for "judicial review" where "there is no adequate remedy by way of direct appeal"). And, of course, absent judicial intervention in this IPR, Verizon has no other means to obtain a final written decision addressing the patentability of the claims. If Verizon filed a new IPR on this patent, it would be time-barred. §315(b).

**B.    Mandamus is appropriate under the circumstances.**

Judicial intervention via mandamus is imperative where an agency ignores statutory requirements and instead acts arbitrarily and capriciously, as the USPTO has done here.

Mandamus is traditionally used to compel an agency to take an action that it is required to take, and to protect a court's prospective jurisdiction. *See Telecomms. Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 76 (D.C. Cir. 1984) ("*TRAC*") ("[S]ection 1651(a) empowers a federal court to issue writs of mandamus necessary to protect its prospective jurisdiction." (citing *FTC v. Dean Foods Co.*, 384 U.S. 597, 603-04 (1966)); *see also* 5 U.S.C. §706(1) (authorizing courts to "compel agency action unlawfully withheld or unreasonably delayed"); *cf. Martin v. O'Rourke*, 891 F.3d 1338, 1342-43 (Fed. Cir. 2018).

Here, mandamus is appropriate for both of these traditional reasons. As explained above, §318(a) *requires* that the USPTO issue a final written decision in an instituted IPR absent narrow circumstances not relevant here. *See supra* pp. 18-27. The agency has refused to follow that congressional mandate. Mandamus is appropriate to compel the USPTO to take the action it is "*required to take.*" *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63-64 (2004) (emphasis original).

Mandamus is also appropriate here to protect this Court's prospective jurisdiction. *See TRAC*, 750 F.2d at 76. This Court has "exclusive" jurisdiction over

appeals from decisions of the Board, 28 U.S.C. §1295(a)(4)(A), and the agency's refusal to issue a final written decision deprives this Court of that eventual jurisdiction. *See Dean Foods*, 384 U.S. at 603 ("[T]he authority of the appellate court 'is not confined to the issuance of writs in aid of a jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected.'" (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943))).

Additionally, mandamus is appropriate "to decide 'basic' and 'undecided' questions" and "to further supervisory or instructional goals where issues are unsettled and important." *In re BigCommerce, Inc.*, 890 F.3d 978, 981 (Fed. Cir. 2018) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964), and *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1291 (Fed. Cir. 2016)). It is also appropriate "to decide issues 'important to proper judicial administration.'" *In re Cray Inc.*, 871 F.3d 1355, 1358-59 (Fed. Cir. 2017) (quoting *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011)).

This case falls squarely within the realm where mandamus is appropriate. It presents a fundamental, yet undecided question about the agency's statutory authority to terminate an instituted IPR. *See BigCommerce*, 890 F.3d at 981. That question goes to the core of the IPR system Congress created. Indeed, the USPTO's

new practice of terminating IPRs for seemingly any reason threatens to undermine that carefully crafted system altogether. *See Cray*, 871 F.3d at 1358-59. By collapsing the "two-step procedure for *inter partes* review" that Congress created into one perpetual question of institution, *St. Jude*, 749 F.3d at 1375–76, post-institution terminations inject massive uncertainty into the IPR scheme. The institution question would never be "final," §314(d), until the entire IPR concludes once and for all—often well over five years into the case, and sometimes after multiple appeals to this Court. If an instituted IPR can be terminated at any point in that process, and for any arbitrary reason, it will be impossible for industry stakeholders to make informed decisions about patent transactions, litigation strategy, or licensing.

The statutory question presented here is critically important, as this is now becoming a recurring issue in IPRs. In fact, the very first director-review decision issued by the new USPTO Director, John Squires, took the exact same approach—terminating an IPR *after* the claims had been invalidated by a PTAB panel. *See* Order, *Interactive Commc'ns Int'l, Inc. v. Blackhawk Network Inc.*, IPR2024-00465, Paper 39 (Director Oct. 1, 2025).[10] There, the Director analyzed the merits of the panel's obviousness analysis, particularly the IPR petitioner's expert testimony regarding

---

[10] *See* Dennis Crouch, *Contradictory Expert Testimony and Director Review* (Oct. 2, 2025) (noting this as Director Squires' first Director Review decision), https://patentlyo.com/patent/2025/10/contradictory-testimony-director.html.

the motivation-to-combine analysis for certain grounds. *See id.* at 2-4. He concluded that "[t]he Board abused its discretion by improperly crediting expert testimony that has multiple material contradictions." *Id.* at 3. After explaining that all grounds in the petition relied on the expert's testimony, he terminated the proceeding "[f]or this reason," citing this Court's decision in *BioDelivery II* and the non-precedential decision in *Sling. Id.* at 3-4 (citing *Sling TV, L.L.C. v. Realtime Adaptive Streaming LLC*, 840 F. App'x 598 (Fed. Cir. 2021); *BioDelivery Scis. Int'l, Inc. v. Aquestive Therapeutics, Inc.,* 935 F.3d 1362 (Fed. Cir. 2019)). The Director then stated that "[t]his decision does not constitute a final written decision under 35 U.S.C. § 318(a)." *Id.* at 4.

Just like in Verizon's IPR, in *Blackhawk*, the Director analyzed the panel's obviousness analysis on the merits and disagreed with the panel. *Id.* at 2-4. But instead of issuing a *new* final written decision upholding the claims, or remanding the case to the panel to correct its analysis and issue a new final written decision, Director Squires "terminated" the proceeding and stated his decision "does not constitute a final written decision." *Id.* at 4. That mirrors the approach the then-Acting Director took in Verizon's IPR—an approach the agency now argues defeats judicial review. *See generally* USPTO's Motion.

34

That itself establishes why mandamus is appropriate. Interpreting §318(a) to allow an instituted IPR to be terminated at any time, and for any reason, allows the director to institute an IPR, proceed through a full trial, see how the three-judge Board panel decides the case, and then, if the director does not like the result, change the outcome of the case by vacating the panel's decision and terminating the IPR altogether. Such "shenanigans" not only should be reviewable, *see supra* pp. 13-17, they should be forbidden altogether. *See* §318(a); *Cuozzo*, 579 U.S. at 275; *Minneapolis Gas Co. v. Fed. Power Comm'n*, 294 F.2d 212, 215 (D.C. Cir. 1961) (concluding agency should not be permitted to "pursue one course almost to the end and then protect its last step by reverting to its discretionary power"); *Kucana v. Holder*, 558 U.S. 233, 237 (2010) (cautioning against "plac[ing] in executive hands authority to remove cases from the Judiciary's domain"). Allowing the agency to use this procedural maneuver to evade review "would be a major error of considerable importance." *See Minneapolis Gas*, 294 F.2d at 215.

Finally, allowing the USPTO to terminate an IPR for any reason risks wasting substantial judicial resources. It would allow the agency to terminate IPRs without reaching the patentability merits *even after* this Court has gone through the extensive effort of reviewing a Board's patentability decision, determining the Board erred in its decision, and remanding for the Board to correct that error. *Cf. Atlanta Gas Light*,

33 F.4th 1348, 1352 (Fed. Cir. 2022). Rather than doing the work of implementing this Court's guidance, the agency may simply choose to terminate an IPR on remand—rendering the entire judicial exercise futile. Allowing that result to occur repeatedly in routine cases undermines respect for this Court's decisions and for the process of judicial review.

Neither §314(d) nor this Court's decision in *Mylan Laboratories Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375 (Fed. Cir. 2021), precludes mandamus review. *Contra* USPTO's Motion 9-14. Section 314(d) does not bar review of the agency's arbitrary-and-capricious "shenanigans," or of Verizon's statutory argument that the agency exceeded its statutory authority by refusing to issue a final written decision as required by §318(a). *See supra* pp. 13-17; *Cuozzo*, 579 U.S. at 275; *SAS*, 584 U.S. at 371 (§314(d) does not preclude judicial review where "the Patent Office has engaged in 'shenanigans' by exceeding its statutory bounds" (quoting *Cuozzo*, 579 U.S. at 275)); 5 U.S.C. §706(2) (directing courts to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations'"). Because §318(a) governs how an IPR proceeds *after* institution, Verizon's argument regarding the requirements under §318(a) "is more like the reviewable challenge in *SAS*, which concerned whether the PTO had exceeded its statutory authority as to

36

the manner in which the already-instituted IPR proceeded." *Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1332 (Fed. Cir. 2020) (holding joinder decision reviewable despite §314(d) because "the joinder decision is made *after* a determination that a petition warrants institution").

For that same reason, *Mylan* does not govern the standard for mandamus relief here. *Mylan* addressed a petition for mandamus from an initial institution denial—not a statutory challenge to how the USPTO conducts already-instituted IPRs in light of §318(a). 989 F.3d at 1377. Here, Verizon's request for mandamus relief aligns with the traditional use of the writ to compel action required by statute (here, to compel the USPTO to enter the final written decision required under §318(a)). *See TRAC*, 750 F.2d at 76. Accordingly, *Mylan*'s statement regarding mandamus requiring a "colorable constitutional claim[]" does not apply here. *See Mylan*, 989 F.3d at 1382.

For all of these reasons, judicial intervention via mandamus is appropriate to restore meaning to the text of §318(a), to ensure stability in the IPR process Congress designed, and to respect the critical role of judicial review.

## CONCLUSION

For these reasons, Verizon respectfully requests that the Court deny the motions to dismiss filed by Omega and the USPTO and allow Verizon's appeal to proceed. Alternatively, Verizon respectfully requests a writ vacating the then-Acting

Director's Final Order, and directing the USPTO to reinstate Verizon's IPR proceeding and to issue a final written decision addressing the patentability of the challenged claims. Verizon further requests all such other relief to which it may be justly entitled.

Dated: October 29, 2025

Respectfully Submitted,

**HAYNES AND BOONE, LLP**

*/s/ Angela M. Oliver*
Angela M. Oliver
888 16th Street NW, Suite 300
Washington, D.C. 20006
(202) 654-4552
*angela.oliver@haynesboone.com*

Debra J. McComas
Michael F. Qian
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
(214) 651-5375
*debbie.mccomas@haynesboone.com*

**Attorneys for Appellant**
**Verizon Connect Inc.**

## CERTIFICATE OF COMPLIANCE

1.      This response complies with the type-volume limitation of this Court's Order of Oct. 24, 2025 (ECF No. 26) because:

■      this response contains **7,777** words, excluding the parts of the response exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

2.      This response complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E) because:

■      this response has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in 14-point Equity A font.

*/s/ Angela M. Oliver*
Angela M. Oliver